CHALMERS ALLISON *vs.* WHITTIER REGIONAL VOCATIONAL HIGH SCHOOL DISTRICT & another.[1] February 15, 1983. Allison was employed by the Haverhill school committee as a teacher in the Haverhill Trade School from 1959 until September, 1973. The defendant Whittier Regional Vocational High School District (the District) concedes that Allison there had achieved tenure. During his employment by the local school committee, Haverhill's city council on May 24, 1966, accepted G. L. c. 32B, §§ 9A and 11B, and later accepted §§ 7A and 9E. The acceptance of these statutes led to the adoption by Haverhill on September 21, 1971, of

_____
[1] The city of Haverhill.

an ordinance, effective January 1, 1971, by which Haverhill undertook to pay seventy-five percent of the medical insurance premiums of employees retiring on and after July 1, 1966.

In 1973, Allison became a teacher in the District's vocational high school when the District began to operate in September, 1973, and continued to serve the District until his retirement on June 30, 1980. Then he received $1,037.95 of severence pay and early retirement pay of $2,000 a year for each of two years.

The District, which includes Haverhill and took over its vocational education, exists by reason of St. 1967, c. 156, and St. 1969, c. 381, although its operations began in 1973. Those of its employees, formerly employed by the city, have at least interests afforded to them by G. L. c. 71, § 42B, as amended through St. 1970, c. 389. That section provides in substance that school personnel, serving at the discretion of a local school committee of a "town" (which term includes "city," see G. L. c. 4, § 7, Thirty-fourth), "whose position is superseded by . . . the establishment and operation of a regional school district," shall be elected by the district school committee to serve at its discretion and shall be placed on that committee's salary schedule so that the compensation paid to such person "shall not be less than the *compensation* received by such school personnel" when previously serving the local school committee (emphasis supplied). The statute then provides that personnel so superseded shall be "given credit by the regional school district committee for all accumulated sick leave," accumulated sabbatical leave years of service, "and for *terminal compensation* due such school personnel on the termination of such service" (emphasis supplied). The section is long and not wholly internally consistent.

Allison filed his complaint on August 15, 1980, seeking declaratory and injunctive relief concerning his claim to have seventy-five percent of his health insurance premiums after retirement paid by the District. Interim injunctive relief was afforded. The pleadings and various affidavits established essentially the facts already stated. A Superior Court judge, on Allison's motion, granted summary judgment. The judgment declared that the District must pay seventy-five percent of Allison's health insurance payments because the obligation to do so represents "terminal compensation" within c. 71, § 42B, and enjoined the District from refusing such payments. He also, on the city's motion, dismissed the action as to Haverhill. The District appealed from the judgment concerning its duty. Allison appealed from the dismissal of Haverhill as a defendant.

Section 42B is not explicit in what it means by "compensation" and "terminal compensation." The section's general import is that a city school teacher whose functions are "superseded" by his employment by a regional school district is not to be reduced in compensation by the change of employer. The plain language of the section strongly suggests that a "superseded" city teacher is to carry with him or her to district employ-

ment an accrued claim to all the benefits (whether to take effect during subsequent district employment or upon and after retirement from district employment) of which that teacher had become the beneficiary as a consequence of city employment. No language of § 42B clearly limits in any way benefits which are to survive the transfer between employers. Compare the mandatory statute discussed in *Boston Assn. of School Admrs. & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 338, 342-343 (1981). A "superseded" employee naturally could regard eventual payment of the benefits granted by Haverhill with respect to three-quarters of his health insurance premiums as within the "core of his reasonable expectations" of what he was to receive for his service during his career. See *Opinion of the Justices*, 364 Mass. 847, 861-862 (1973). In context, such a contribution to health insurance premiums seems plainly a form of "compensation" and probably also of "terminal compensation." See *School Comm. of Medford* v. *Labor Relations Commn.*, 8 Mass. App. Ct. 139, 140-141 (1979), *S.C.*, 380 Mass. 932 (1980).

No legislative history has been brought to our attention which sheds light upon the interpretation of § 42B. We note, however, that an officer of Massachusetts Teachers Association was a petitioner for at least two of the legislative amendments which have steadily expanded the coverage of § 42B in recent years. See 1970 House Doc. 1420, the basis of St. 1970, c. 389, and 1976 Senate Doc. No. 262, the basis of St. 1976, c. 351. That Association would not have been a likely proponent of any restrictive interpretation of § 42B.

*Judgment affirmed.*

*Robert P. Rudolph* for Whittier Regional Vocational High School District.

*Ashod N. Amirian*, Assistant City Solicitor, for the city of Haverhill.

*Sandra C. Quinn* for the plaintiff.