MAUREEN C. GUSTAFSON *vs.* WACHUSETT REGIONAL SCHOOL
DISTRICT & another.[1]

No. 04-P-1003.

Worcester. June 3, 2005. - October 20, 2005.

Present: LAURENCE, DUFFLY, & KATZMANN, JJ.

Further appellate review granted, 445 Mass. (2005).

*Public Employment,* Sick leave benefits, Collective bargaining. *School and School Committee,* Regional school district, Collective bargaining. *Labor,* Public employment. *Contract,* School teacher, Regional school district, Employment, Construction of contract.

In a civil action brought by the plaintiff, a retired school teacher, against a town, the plaintiff was entitled to reimbursement for accumulated unused sick leave benefits, where, under the terms of a collective bargaining agreement reached when the town became part of a regional school district (the "bridge agreement"), all provisions in the town's previous agreement with the plaintiff's collective bargaining unit (the "town agreement") that did not have counterparts in the bridge agreement were to prevail until such time as a successor regional collective bargaining agreement was ratified, and where one of the provisions of the town agreement that did not have an analogue in the bridge agreement was the provision governing reimbursement of unused accumulated sick leave pay; consequently, the plaintiff attained the requisite number of years of service to qualify for the sick leave benefit while the town agreement's sick leave benefit provision was in effect, and she thereby became entitled to that benefit as one due her when she eventually retired. [806-811]

CIVIL ACTION commenced in the Superior Court Department on February 11, 2000.

The case was heard by *John P. Connor, Jr.,* J.

*Paul M. Cranston* for town of Rutland.

*David E. Ashworth* for the plaintiff.

LAURENCE, J. After a bench trial, a judge of the Superior Court entered judgment in favor of the plaintiff, Maureen C. Gustafson, and ordered the town of Rutland to reimburse her

[1]Town of Rutland.

for accumulated sick leave benefits she claimed to have earned while employed by Rutland. Rutland appeals, arguing that the judge erred in awarding her payment for these sick leave benefits because Gustafson was not employed by Rutland for fifteen years, as required by the terms of her collective bargaining agreement. We affirm the judgment.

Gustafson worked for Rutland, principally as an elementary school teacher, from January, 1981, to June 30, 1994. During that period, her union (the Rutland Teachers Association) and Rutland negotiated a collective bargaining agreement (the "Town Agreement"), in effect (according to the parties' stipulation) from September 1, 1993, through August 31, 1994, which provided in relevant part:

> "Upon retirement with at least 15 years in the Rutland Public School System, a teacher, after notifying the Superintendent [one] year prior to their [sic] retirement, will be reimbursed for [one-half] of any unused accumulated sick leave."

On July 1, 1994, after a vote of the member towns (Holden, Paxton, Princeton, Sterling, and Rutland), the Wachusett Regional School District (WRSD), which already ran the regional high school for the towns, assumed jurisdiction over students in prekindergarten through grade eight, and the separate school systems in the constituent towns ceased to exist. (Of those systems, only Rutland's had provided for an accumulated sick pay benefit.) Accordingly, at that time Gustafson, like all other elementary school teachers, became an employee of WRSD.

The December, 1993, agreement (the "Authorization Agreement") pursuant to which the participating towns effected the regionalization of their primary schools had contained, inter alia, the following provision (§ 18.2):

> "Terminal benefits due to professional staff and personnel formerly employed by an individual member town, shall remain the financial obligation of the individual member town, upon severance of service of the employee . . . ."[2]

[2]The words "terminal benefits" were not defined in the Authorization

In June, 1995, WRSD and the Wachusett Regional Education Association, Inc. (WREA), entered into a so-called "Bridge Agreement" to govern collective bargaining issues between WRSD and the teachers in the constituent towns retroactively to September 1, 1994, pending agreement on a more permanent collective bargaining agreement. The aspect of the Bridge Agreement pertinent to this case is contained in the preamble:

> "The provisions of this Agreement listed below shall supersede and take precedent [*sic*] over any and all like provisions in collective bargaining agreements between individual town(s), committees, collaboratives, and associations representing employees covered by the Recognition clause and included in the Regionalization Agreement adopted December 28, 1993. All other provisions of local agreements shall prevail for their individual locations until such time as a successor agreement is ratified by the Committee and the Association."

The Bridge Agreement contained no provisions concerning sick leave or any other retirement benefits due employees.

Gustafson completed fifteen years of teaching service in early 1996, as a WRSD employee, while the Bridge Agreement was in effect. She retired from teaching on December 31, 1998, and upon retiring made demand upon Rutland for payment of her accumulated sick leave, amounting to $14,098.79 for 102.5 days. Gustafson also sought $2,000 from WRSD, representing fifty days of sick leave at forty dollars per day, pursuant to the collective bargaining agreement between WREA and WRSD effective September 1, 1997, through August 31, 2000 (the "District Agreement"), which succeeded the Bridge Agreement and provided that:

> "Any member of the bargaining unit having completed fifteen (15) continuous years of service to the district or its predecessors shall be able to receive payment for fifty (50)

Agreement and appear nowhere in the statute governing regionalization, G. L. c. 71. The term "terminal compensation" is used in § 42B of c. 71, and has been held to be the equivalent of "terminal benefits" as used in § 18.2 of the Authorization Agreement and to include unused sick pay benefits. See *Wachusett Regional Sch. Dist.* v. *Rutland*, 54 Mass. App. Ct. 911, 912 (2002).

of their accumulated sick leave days as of the date of retirement or death. . . . All members of the bargaining unit shall receive payment for each day at the rate of $40 per day."

Although Gustafson received the $2,000 under the District Agreement, Rutland denied her any reimbursement for accumulated sick leave under the Town Agreement.[3] She brought suit against Rutland and WRSD for payment of the 102.5 days of accumulated sick leave she had acquired, and WRSD filed a cross claim against Rutland.

After a bench trial, a judge of the Superior Court held that Rutland was obligated to pay Gustafson $14,098.79 in accumulated sick leave benefits and dismissed WRSD's cross claim. Construing the relevant agreements as "not ambiguous . . . [with] no essential terms omitted," the judge ruled that since the Bridge Agreement made no specific reference to accumulated sick leave (or any other employee benefit), but stated that the provisions of the local collective bargaining agreements governing matters not mentioned in the Bridge Agreement were not superseded but "shall prevail" until the more comprehensive collective bargaining agreement was negotiated by WREA and WRSD, "whatever pre-existing benefits [that] were not addressed by the Bridge Agreement would remain in place until the adoption of a future agreement."

The judge consequently held "that for all purposes [Gustafson] is to be treated as an employee with more than 15 years of service and is entitled to those benefits that accrued while a Rutland employee, specifically the 102.5 days of accumulated unused sick leave." His reading of G. L. c. 71, § 42B, as amended through St. 1993, c. 71, § 46, confirmed him in this result, particularly the following language (emphasis supplied):

"[S]chool personnel . . . whose positions are superseded

---

[3]On November 17, 1994, the WRSD personnel department sent Gustafson a letter informing her that as a former employee of the Rutland public schools she would be entitled to a sick leave buy-out as a "terminal benefit" upon her retirement from the regional system and that her "sick leave accrual" then amounted to almost $8,000. On April 3, 1998, however, she was informed by that department that the November 17, 1994, letter had been sent in error and that she was not eligible for the Rutland sick leave benefit because she had less than fifteen years of service in the Rutland public school system.

by reasons of the establishment and operation of a regional school district, *shall be employed with the same status by the regional school district.*

" . . .

"Such . . . personnel shall *also be given credit by the regional school district committee for all accumulated sick leave* and accumulated sabbatical leave years of service while employed with such status *and for terminal compensation due such school personnel on the termination of such service.*"

The judge concluded by ruling that the language in § 18.2[4] of the Authorization Agreement, quoted *supra*, "leaves no doubt" that Rutland (and not WRSD) must pay Gustafson for accumulated unused sick leave.

While we do not share the judge's view that the relevant agreements were unambiguous, we conclude, as did the judge, that Gustafson is entitled to reimbursement from Rutland for her accumulated unused sick leave. There is no dispute that Gustafson's entitlement to sick leave benefits arose from the Town Agreement, which for the first fourteen years of her teaching service was the document that controlled the determination of her benefits as a union member. By the express terms of the Bridge Agreement, all provisions of the Town Agreement not having a counterpart in the Bridge Agreement were to "prevail[5] for their individual locations until such [future] time as a successor [regional collective bargaining] agreement is ratified." In the words of David P. Trainor, who was chief labor relations and personnel officer for WRSD and involved in negotiation of the Bridge Agreement, "[t]he contract [i.e., the Town Agreement, which on its face had an effective life from September 1, 1990, through August 31, 1993] was extended by the Rutland

---

[4]Section 18.2 was numbered 18.1 at the time of trial, and was referred to as such in the judge's memorandum of decision. See *Wachusett Regional Sch. Dist.* v. *Rutland,* 54 Mass. App. Ct. at 912 & n.2.

[5]"Prevail," as used in this context, manifestly means "to be effective" or "to be in force or effect." See American Heritage Dictionary 982 (2d ed. 1982); Webster's Third New Intl. Dictionary 1797 (1993).

School Committee by letter through June 30, 1994 and was further extended . . . by operation of the Bridge Agreement."[6]

One of the provisions of the Town Agreement without an analogue in the Bridge Agreement was that governing reimbursement for unused accumulated sick leave pay, which consequently continued to "prevail" until at least a year after Gustafson had completed her fifteenth year of teaching service in 1996, surviving until the execution of the District Agreement in 1997.[7] Gustafson therefore enjoyed fifteen years of teaching Rutland students while the Town Agreement's sick leave benefit provision was in effect, and she thereby became entitled to that benefit as one due her when she eventually retired.

Rutland's principal argument against Gustafson's entitlement is that by virtue of the "Miscellaneous d" section of the Town Agreement, the parties "agreed" that the provisions of the Town

---

[6]The parties' stipulation of facts stated that the Town Agreement was "in effect through August 31, 1994," and that the Bridge Agreement "ran from September 1, 1994 through August 31, 1997." The commencement of the Bridge Agreement as of September 1, 1994, immediately upon the extended formal expiration of the Town Agreement on August 31, 1994, clearly demonstrates the intimate relationship between the two agreements reflected in the preamble to the Bridge Agreement, i.e., the latter either superseded or continued the several provisions of the former.

[7]Rutland at several points states that it was not a signatory to the Bridge Agreement, thereby implying that it was not bound by that agreement. That implication is not, however, sustained by any coherent argument supported by reasoning and authorities, and we need not address it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In any event, Rutland's suggestion makes no sense in light of its status as a constituent and financially supportive member of WRSD with representation on the regional school committee responsible for negotiating labor contracts and other employment matters. Rutland's position is ultimately premised on its ignoring the intent and effect of the Bridge Agreement, particularly the key concept of local collective bargaining agreements continuing to "prevail" to the extent not addressed by the Bridge Agreement (regarding which it offers no interpretation or explanation whatsoever). Despite its lip service acknowledgment of the validity of the judge's interpretation of the several agreements herein involved as a whole and in light of each other, Rutland's position treats as superfluous and therefore renders meaningless the very provision of the Bridge Agreement upon which this controversy hinges, contrary to established principles of contract law. See *Computer Sys. of America, Inc.* v. *Western Reserve Life Assurance Co.*, 19 Mass. App. Ct. 430, 437-438 (1985), and cases cited ("every word and phrase of a contract should, if possible, be given meaning, and . . . none should be treated as surplusage if any other construction is rationally possible").

Agreement would "terminate" and "would no longer be in force" if and when regionalization occurred.[8] The "Miscellaneous d" section provides:

> "The parties hereto understand that a regionalization of all or of any portion of the present school system of the Town of Rutland will terminate this agreement as to those staff members affected by such regionalization, but if any portion of the system remains unregionalized, the provisions hereof shall remain in full force and effect as to those staff members retained in the remaining portion of the Rutland School System."

We disagree with Rutland's interpretation. The operative word used in that section, "understand," is not a term of agreement.[9] In context, it amounted to a mere prediction or anticipation of future events and was distinguishable from a manifestation of intention to be bound or an enforceable promise or agreement. See Restatement (Second) of Contracts § 2 comment f (1981).[10]

---

[8]Rutland's secondary argument, based upon a literal reading of the Town Agreement, is that Gustafson never satisfied the condition that she work fifteen years in "the Rutland Public School System" in order to become vested — a condition that was impossible to satisfy because the system ceased to exist before she reached her fifteenth year of teaching. This strained contention makes sense only by disregarding the existence, or at least the effect, of the Bridge Agreement, which, as noted above, preserved her right and eventual entitlement to the unused sick leave benefit until execution of the District Agreement in 1997, well after she had completed her fifteenth year of service.

[9]See Webster's Third New Intl. Dictionary 2490 (1993), giving as principal meanings of "understand": "to know, consider, or accept as a fact, truth, or principle without further mention or explanation or without utter certainty"; "to consider as a possible fact: infer or come to regard as plausible or probable without certain knowledge or proof."

[10]By contrast, when the parties to the Town Agreement desired to manifest their intention to create binding and enforceable obligations, they knew how to do so, as evidenced by the immediately preceding section, "Miscellaneous c," which forthrightly states: *"The [Rutland Teachers] Association agrees* that it will not . . . strike . . . [and] *[t]he Association and its members, individually and collectively agree* that . . . [members who strike] will . . . be subject to disciplinary action . . . [that] shall not be arbitrable" (emphasis supplied). See also "Miscellaneous f" ("All employees by this Agreement who do not [now] pay Association dues *shall be required to make payment* . . . of an Agency Service Fee to the Association" [emphasis supplied]); and "Miscellaneous e" ("[T]he parties hereto for the life of this agreement *each voluntarily and unqualifiedly waive the right* . . . to bargain collectively [as to any

In fact, the prediction or anticipated state of affairs reflected in "Miscellaneous d" proved to be erroneous and was superseded by events. Regionalization occurred on July 1, 1994, but the Town Agreement did not then terminate, instead continuing in effect by ongoing collective bargaining through August 31, 1994, with significant sections thereof — including the unused sick leave benefit — remaining in effect until September 1, 1997, by virtue of the Bridge Agreement, collectively bargained on behalf of both Rutland and its teachers.[11]

subject addressed in the Town Agreement] . . . . This provision is not to be interpreted so as to prevent commencement and maintaining [sic] of discussions for a successor agreement as called for in the Duration Clause." [Emphasis supplied.])

[11]In this connection, we take note of the special nature of collective bargaining agreements. See, e.g., *Boston Teachers Union, Local 66* v. *Boston*, 44 Mass. App. Ct. 746, 754-755 (1998) ("Professor Cox reminds us: 'The governmental nature of a collective bargaining agreement should have predominant influence in its interpretation. The generalities, the deliberate ambiguities, the gaps, the unforseen contingencies, the need for a rule although the agreement is silent — all require a creativeness quite unlike the attitude of one construing a deed or a promissory note or a three-hundred page corporate trust indenture.' Cox, The Legal Nature of Collective Bargaining Agreements, 57 Mich. L. Rev. 1, 25 [1958]. There is need to take account both of the practical necessity to avoid uncontracted-for gaps of time between bargaining agreements and of the often uncomfortable and sometimes unpredictable passage of time while steps of ratification are taken: hence parties assure continuity by contractual provision for retroactivity. The city [of Boston] would have the 1986-1989 contract 'expire' on August 31, 1989, and the new contract take on life only when funded in March, 1990. But life continued between these dates: teachers were working and received their salaries and insurance coverage as governed by the old contract; the only open question was the rates of increase in salaries [and incidentals]. Bargaining on that question continued and the solution, when reached, was made retroactive to the commencement date of the new contract coinciding with the rest of the agreement. On this view the insurance contribution provisions, as carried over continuously from the earlier bargaining agreement, were grandfathered . . . . A contrary result appears inequitable . . . ." [Footnote omitted.]) A similar solution was reflected in the Bridge Agreement, which, although finally negotiated in 1995, was made retroactive to September 1, 1994, to avoid any gap between agreements.

Another labor law technique for avoiding gaps is the use of a "rollover" or "evergreen" clause common in collective bargaining agreements. Such a provision typically states that even after the expiration of the term of the agreement, its provisions will continue in force until changed by the parties or until the negotiation of a new agreement. Compare *Boston Lodge 264, Intl. Assn. of Machinists* v. *Massachusetts Bay Transp. Authy.*, 389 Mass. 819, 820-821 (1983); *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay*

The operation of the Bridge Agreement also renders Rutland's final argument without force. Rutland points to the word "due" in both § 18.2 of the Authorization Agreement ("[t]erminal benefits due") and G. L. c. 71, § 42B ("terminal compensation due"), and asserts that nothing was ever "due" Gustafson because she never performed the requisite fifteen years of service as a Rutland public school system teacher. Again, Rutland's argument necessarily assumes that the Town Agreement entirely expired on August 31, 1994, and that the Bridge Agreement does not apply to Gustafson's claim for the sick leave benefit, both of which are assumptions without basis in fact or law. As discussed above, by virtue of the carry-over provision of the Bridge Agreement, Gustafson became entitled to reimbursement for unused sick leave once she completed fifteen years of teaching service,[12] at which time that benefit "accrued," see *Allison* v. *Whittier Regional Vocational High Sch. Dist.*, 15 Mass. App. Ct. 944, 946 (1983),[13] and was legally

_____

*Transp. Authy.*, 414 Mass. 323, 325-327 (1993); *Massachusetts Bay Transp. Authy.* v. *Local 589, Amalgamated Transit Union*, 20 Mass. App. Ct. 418, 426-427 (1985). The copy of the Town Agreement in the record lacks several pages that might contain such a clause, but the "successor agreement" language of "Miscellaneous e" (quoted in note 10, *supra*) suggests that some type of rollover or successor language existed in the missing "Duration Clause." It is likely that one existed, given the explicit "rollover" language of the last sentence of the preamble to the Bridge Agreement ("All other provisions of local agreements shall prevail for their individual locations until such time as a successor agreement is ratified by the [Regional School] Committee and the [Regional Education] Association"). The District Agreement, which succeeded the Bridge Agreement, contained just such a provision, Article 2A (which was not in the record on appeal but was provided to the court by consent of the parties).

[12]By operation of the Bridge Agreement, Gustafson became "eligible" within the meaning of *Wachusett Regional Sch. Dist.* v. *Rutland*, 54 Mass. App. Ct. at 912, wherein this court affirmed a judgment declaring that § 18.2 of the Authorization Agreement was enforceable and that under it Rutland was obligated to pay the sick leave benefits due to the teacher in that case (who had over fifteen years of service prior to regionalization), "and to any other eligible former employee of Rutland who retire[s] from the [regional school] district in the future . . . ."

[13]In *Allison*, 15 Mass. App. Ct. at 945-946, we observed that the "general import" of G. L. c. 71, § 42B, "is that a city school teacher whose functions are 'superseded' by his employment by a regional school district is not to be reduced in compensation by the change of employer. . . . [A] 'superseded' city teacher is to carry with him or her to district employment an accrued

"due" her upon her retirement, in the accepted meaning of the word. See Black's Law Dictionary 538 (8th ed. 2004).

*Judgment affirmed.*

---

claim to all the benefits . . . of which that teacher had become the beneficiary as a consequence of city employment."

Rutland's argument that, under *Allison*, only regional districts, and not individual school districts, remain obligated to pay 'superseded' teachers' benefits, is unavailing. In *Allison*, we determined that, pursuant to § 42B, the regional district was obligated to pay the employee's retirement benefits. The former city employer, Haverhill, was dismissed from the case. Rutland, however, ignores the fact that, as Haverhill was not a member of the WRSD, the Authorization Agreement at issue here was not implicated. See note 12, *supra.*