ROBERT O'NEILL vs. SCHOOL COMMITTEE OF NORTH
BROOKFIELD & another.[1]

Hampshire. October 4, 2012. - February 8, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*School and School Committee*, Superintendent of schools, Retirement benefits. *Contract*, Employment.

An employment contract between a school committee and a superintendent that contained a provision for annual reimbursement of health insurance premiums in the indefinite future was valid and enforceable, where the reimbursement was simply a benefit provided for in the employment contract, and the fact that it was to be paid annually after the contract expired did not mean that the contract itself extended beyond the six-year limit on such contracts imposed by G. L. c. 71, § 41 [377-380]; further, there was no merit to the defendants' arguments that the relevant statutes did not authorize the school committee to include such a benefit in an employment contract [380-382] or that enforcement of the contract would violate public policy [382].

CIVIL ACTION commenced in the Superior Court Department on October 11, 2006.

The case was heard by *Mary-Lou Rup*, J., on motions for summary judgment; a motion for reconsideration was considered by her; and entry of final judgment was ordered by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brian M. Maser* for the defendants.

*John J. Driscoll* for the plaintiff.

*Sandra C. Quinn & Matthew D. Jones*, for Massachusetts Teachers Association, amicus curiae, submitted a brief.

BOTSFORD, J. Robert O'Neill served as superintendent of schools in the town of North Brookfield (town) from 1998 to 2005. His employment contract provided that on his retirement, he would be reimbursed thereafter for a percentage of his health

---

[1]Town of North Brookfield.

insurance premiums on an annual basis.[2] The question we consider is whether an employment contract between a school committee and a superintendent that contains a provision for annual reimbursement of health insurance premiums in the indefinite future is invalid and unenforceable because it exceeds the six-year limit on such contracts imposed by G. L. c. 71, § 41. We answer the question "No" and affirm the judgment of the Superior Court.

*Background.* The school committee of North Brookfield (school committee) hired O'Neill as superintendent of schools in the spring of 1998. O'Neill continued in that position until July of 2005, and during that time he was party to a series of employment contracts with the school committee. Each provided that while employed as superintendent, O'Neill was to receive all employment-related benefits available to teachers, including health insurance coverage pursuant to G. L. c. 32B.[3]

On October 21, 2002, O'Neill and the school committee executed an employment contract with an effective date of July 1, 2002, and extending through June 30, 2005. This contract contained for the first time a provision entitling O'Neill, on his retirement, to be reimbursed annually for a fixed percentage of the premium costs for an individual health insurance plan (reimbursement clause). The reimbursement clause reads:

> "Upon retirement from the North Brookfield Public
> Schools, the Superintendent will be reimbursed annually

[2]Because the annual reimbursement obligation set out in Robert O'Neill's employment contract does not have an endpoint, the parties treat it as an obligation that is measured by O'Neill's life. We do as well.

[3]General Laws c. 32B provides for contributory group insurance, including contributory group health insurance plans, for employees of counties, cities, and towns. See G. L. c. 32B, § 1, as amended by St. 1975, c. 806, § 1. The town of North Brookfield (town) and the school committee of North Brookfield (school committee) (collectively, defendants) argued at the summary judgment stage of this case that the agreement between the defendants and O'Neill to reimburse a portion of his health insurance premiums after retirement is governed by c. 32B. The motion judge concluded that the parties' agreement, and more specifically its provision for reimbursement of health insurance costs, fell outside the scope of c. 32B as the reimbursement provision related to a plan for individual health insurance and did not implicate the contributory group health insurance plans of the town. Chapter 32B does not control the outcome of this case, and on appeal, the defendants largely abandon the argument.

for the cost of an individual retirement [health] plan of his choice. Said reimbursement will equal the percentage of the cost of the plan based on years of service as Superintendent. For each year of completed service, the reimbursement will equal 10% of the annual cost of the plan. Said reimbursement percentage will be capped equal to the town reimbursement percentage for retired employees at the time of the Superintendent's retirement."[4]

The subsequent, and final, employment contract between the school committee and O'Neill, effective July 1, 2003, through June 30, 2006, contained the same reimbursement clause.

On January 7, 2005, O'Neill notified the school committee of his intent to retire from his position as superintendent, effective August 31, 2005. The school committee thereafter requested that O'Neill advance his retirement date to July 8, and O'Neill agreed. The parties memorialized this understanding in a written memorandum of agreement in which O'Neill agreed to retire from his position as superintendent on July 8 in exchange for, among other things, his receipt of all benefits to which he was entitled under his then-existing employment contract, i.e., the contract that was to be in effect through June 30, 2006.

O'Neill did retire on July 8, 2005, and thereafter he continued to subscribe to the town's health insurance plan through the Consolidated Omnibus Budget Reconciliation Act (COBRA) program. When his COBRA coverage expired, O'Neill procured an individual health insurance plan from Blue Cross/Blue Shield. On October 18, O'Neill requested the school committee in writing to reimburse seventy per cent of his health insurance costs accruing from August, 2005, to the date of the request. The new superintendent of schools forwarded the request to the town, but the town did not respond. In January, 2006, O'Neill sent a second request for reimbursement for a fixed percentage of the premium costs for his health insurance policy from the date of retirement through January. On March 7, the town notified

---

[4]O'Neill served as superintendent for seven years and thus is entitled under the reimbursement clause formula to reimbursement for seventy per cent of his annual insurance plan costs. At the time O'Neill retired, the town's reimbursement percentage for retired public employees with ten or more years of service was eighty per cent.

O'Neill in writing that it would not honor the request, stating, "[S]ince you are no longer an employee, the [t]own is under no obligation to continue to honor any terms of your prior contract upon your retirement."

On October 10, 2006, O'Neill filed this action in the Superior Court against the school committee and the town (collectively, defendants)[5] for breach of contract, breach of the implied covenant of good faith and fair dealing, and specific performance of the contract. The parties filed cross-motions for summary judgment on October 30, 2008. After a hearing, a judge in the Superior Court denied the defendants' motion for summary judgment and allowed O'Neill's. The defendants filed a motion to reconsider the judgment over a year later, and on December 14, 2010, the judge denied the motion. Final judgment entered on January 11, 2011, providing that O'Neill was to recover from the defendants a total of $46,052.57 — representing the amount of O'Neill's health insurance premium costs that should have been reimbursed from August 15, 2005, to the date of judgment, plus interest and costs[6] — and ordering the defendants to reimburse O'Neill annually for seventy per cent of the cost of his health care plan as specific performance of his final employment contract and the parties' memorandum of agreement. The defendants filed timely notices of appeal.

*Discussion.* O'Neill's employment contract with the school committee is governed by G. L. c. 71, § 41, as amended through St. 1996, c. 450, § 127 (§ 41).[7] Section 41 provides in relevant part:

> "A school committee may award a contract to a superin-
> tendent of schools or a school business administrator for

---

[5]At oral argument, the attorney representing the defendants argued that the school committee did not have the authority to bind the town to perform a contract. We agree that the school committee may not bind the town to perform a contract that is beyond the school committee's statutory authority or otherwise illegal. If, however, the argument being advanced is that the town as a general matter is not bound to perform *any* contract executed solely by the school committee because the town itself is not a party, the argument clearly is without merit; the school committee is in substance an agency of the town.

[6]The reimbursement figure for the five years and five months covered by the judgment came to $27,673.18, the interest was $17,968.77, and the costs were $410.62 — totaling $46,052.57.

[7]General Laws c. 71, § 41 (§ 41), was amended in 2006, 2008, and 2010,

periods *not exceeding six years* which may provide for the salary, fringe benefits, and other conditions of employment, including but not limited to, severance pay, relocation expenses, reimbursement for expenses incurred in the performance of duties or office, liability insurance, and leave for said superintendent or school business administrator" (emphasis added).

The defendants argue that a continuing requirement to perform an obligation defined in a contract is evidence of an active, ongoing contract, and accordingly, the obligation to reimburse O'Neill for a percentage of his health insurance costs annually for his life signals that O'Neill's final employment contract was a lifetime agreement that exceeded six years in duration and therefore violated § 41. O'Neill, on the other hand, contends that the annual reimbursement of a portion of health insurance costs is simply a benefit provided for in O'Neill's final employment contract, and the fact that it was to be paid annually after the contract expired does not mean that the contract itself extended beyond its stated three-year term. We agree.

Section 41 vests broad discretion in a school committee to hire a superintendent and to set compensation, conditions of employment, and other benefits of employment. The statute provides a nonexclusive ("including but not limited to") list of benefits. This list includes some, such as severance pay, that in substance are earned during the period of employment but as a practical matter are paid out after the contract terminates;[8] and others, such as salary, that are only paid during the contract term. While the record contains no information concerning the contract negotiations that led to O'Neill's final two employment contracts as superintendent, the reasonable inference to be drawn

but those amendments do not bear on the issue on appeal. See St. 2010, c. 399; St. 2008, c. 314, § 1; St. 2006, c. 267.

[8]During oral argument, the attorney for the town argued that severance payments, as explicitly mentioned in § 41, fundamentally are different from lifetime health insurance reimbursement because severance payments are earned during the period of employment and simply paid after termination. In our view, the reimbursement clause provides for substantively the same kind of benefit: the amount paid as reimbursement for health insurance costs after termination of the contract is tied explicitly to the number of years O'Neill was employed and serving as superintendent.

from the presence of the reimbursement clause in them is that both parties knew at the time that O'Neill was not likely to remain superintendent for the ten-year period required for him to qualify for the town's general program, adopted pursuant to G. L. c. 32B, covering public employees' postretirement health insurance benefits, and therefore they negotiated a separate provision that specifically provided for postemployment payment of a portion of health insurance costs.

We disagree with the defendants that the reimbursement clause converts O'Neill's final employment contract of three years' duration into a lifetime agreement that would presumptively exceed six years. The reimbursement clause entitles O'Neill to reimbursement for a percentage of his health insurance costs going forward, but all the remaining provisions of the contract — for example, those describing his duties and responsibilities as superintendent, requiring his fulfilment of those duties, fixing his salary, and entitling him to all medical, hospital, and life insurance benefits available to the town's teachers — ceased to be in effect on O'Neill's retirement on July 8, 2005. In other contexts, we have recognized that a contract that has expired may include enforceable obligations to be performed by the parties thereafter. See *Boston Lodge 264, Dist. 38, Int'l Ass'n of Machinists & Aerospace Workers* v. *Massachusetts Bay Transp. Auth.*, 389 Mass. 819, 821 (1983) (enforcing provision in collective bargaining agreement requiring payment of cost-of-living adjustments during certain periods following expiration of agreement: "[a]lthough the term of the collective bargaining agreement had ended, there continued . . . a contractual obligation to make cost-of-living adjustments under certain conditions"). The same holds true here. Although O'Neill's final, three-year employment contract with the school committee had come to a (premature) end on July 8, 2005, the school committee had agreed under the express terms of that contract to reimburse O'Neill for a portion of his health insurance costs thereafter.[9] The directive of § 41 that no employment contract between a school committee and a superintendent exceed six years does not absolve the defendants of responsibility to fulfil

[9] The 2005 memorandum of agreement between the school committee and O'Neill effectively restated, and thereby reinforced, this contractual obligation.

this contractual obligation, because O'Neill's final contract fit well within the statute's term limitation.[10]

The defendants also argue that, in any event, the reimbursement clause, or more specifically the payments it calls for, do not qualify as one of the "conditions of employment" that § 41 authorizes the school committee to include in an employment contract with a superintendent of schools. The defendants reason that because these payments are not to be made while O'Neill was employed as superintendent but only after his retirement, they are a form of retirement allowance or supplemental retirement benefit and simply not covered by the plain terms of § 41.[11] Their argument, they claim, is bolstered by reference to G. L. c. 41, § 108N (§ 108N), a statute defining the scope of employment contracts between a city or town and a city or town manager, town administrator, town accountant, city auditor, or a person performing similar duties.[12] In § 108N, the Legislature authorizes cities and towns to include in employ-

---

[10]The defendants argue that for the same reasons this court invalidated evergreen clauses in *Boston Hous. Auth.* v. *National Conference of Firemen & Oilers, Local 3*, 458 Mass. 155 (2010) (*Fireman & Oilers*), we must invalidate the provision in O'Neill's contract requiring them to reimburse O'Neill. The reimbursement clause, however, is not an evergreen clause, and *Fireman & Oilers* provides no support for the defendants' position.

Evergreen clauses operate to extend *all* contractual terms beyond the termination date of that agreement. See *Firemen & Oilers*, 458 Mass. at 163 ("effect of an evergreen clause is to preserve and maintain *all* the provisions of a [collective bargaining agreement]" [emphasis added]). See *Gustafson* v. *Wachusett Regional Sch. Dist.*, 64 Mass. App. Ct. 802, 809 n.11 (2005) ("even after the expiration of the term of the agreement, its provisions will continue in force until changed by the parties or until the negotiation of a new agreement"). In contrast, as discussed in the text, the reimbursement clause deals only with the payment of a portion of health insurance premiums on O'Neill's retirement, and does not affect any other provision of O'Neill's contract that ended with his retirement on July 8, 2005. The defendants' argument fails because it is built on the legally incorrect premise that when a contract provides for an agreed-upon benefit to extend beyond the contract term, the entire contract is extended.

[11]See *supra* at 377-378.

[12]General Laws c. 41, § 108N, provides in pertinent part:

"Notwithstanding the provision of any . . . law to the contrary, any city or town acting through its board of selectmen or city council or mayor with the approval of the city council, as the case may be, may establish an employment contract for a period of time to provide for the salary, fringe benefits, and other conditions of employment, including

ment contracts with such employees precisely the same employment benefits as are set out in § 41 — indeed, the Legislature uses the identical language in both statutes — but then separately states that these contracts also may provide for "supplemental retirement and insurance benefits"; § 41 contains no such separate provision. The defendants read this distinction between the two statutes as a crystal-clear sign that the Legislature did not intend in § 41 to authorize a school committee to include any type of retirement benefit, including postretirement payments for health insurance coverage, in a contract with its superintendent.

We do not read §§ 41 and 108N in the manner advanced by the defendants. Section 108N by its terms allows a town to provide supplemental insurance benefits to the employees covered by the section *in addition to* the insurance benefits that these employees would be entitled to receive under G. L. c. 32B. But § 108N, like § 41, is silent on the question whether an employment contract between a city or town and an employee performing duties covered by the section may provide for postretirement health insurance if the employee, like O'Neill, does not qualify for coverage under c. 32B because he or she had not been employed for the requisite number of years. As a general matter, an employer's provision of health insurance coverage to an employee — whether while the employee is still employed or on his or her retirement — represents a "fringe benefit" of the employment. Sections 41 and 108N both expressly authorize the public employer in question, school committee or municipality, to provide for fringe benefits in contracts with the employees covered by these statutes. The postretirement reimbursement for health insurance costs provided to O'Neill by the reimburse-

---

but not limited to, severance pay, relocation expenses, reimbursement for expenses incurred in the performances of duties or office, liability insurance, and leave for its town manager, town administrator, executive secretary, administrative assistant to the board of selectmen, town accountants, city auditor or city manager, or the person performing such duties having a different title.

"Said contract shall be in accordance with and subject to the provisions of the city or town charter . . . . *In addition to the benefits provided municipal employees under [G. L. cc. 32 and 32B] said contract may provide for supplemental retirement and insurance benefits*" (emphasis added).

ment clause derives directly from his seven-year employment as superintendent, constitutes a bargained-for fringe benefit of his employment, and is not supplemental to other, already-guaranteed benefits. We read § 41, as well as § 108N, to authorize this type of benefit.

The defendants do not contend that O'Neill failed to perform his final employment contract with the school committee, or that the contract was unsupported by sufficient consideration. Nor do the defendants argue that the health insurance policy or policies that O'Neill has purchased after his retirement are excessively expensive or profligate in any way. Accordingly, as the motion judge concluded, O'Neill is entitled to the specific enforcement of the reimbursement clause in his final employment contract. See generally *Salvas* v. *Wal-Mart Stores, Inc.*, 452 Mass. 337, 374 (2008), citing *Pierce* v. *Clark*, 66 Mass. App. Ct. 912 (2006) (if defendant breached contract with plaintiff employees, plaintiffs would be entitled "to the value of the bargained-for benefit of which they have been deprived").

Finally, the defendants' assertion that enforcing this employment contract violates public policy is wholly without merit. Rather, as O'Neill contends, what may offend public policy is for a public employer such as the school committee or the town to enter into a valid contract with an employee that permissibly guarantees certain postretirement benefits and later, after the employee has fully performed, refuse to honor the plain terms of the agreement.

*Conclusion.* The judgment of the Superior Court is affirmed.

*So ordered.*