NEWTON BRANCH OF THE MASSACHUSETTS POLICE
ASSOCIATION *vs.* CITY OF NEWTON & others.[1]

Middlesex.   September 10, 1985. — November 7, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Labor,* Collective bargaining, Duty to bargain. *Police,* Collective bargain-
ing, Incapacity.

After negotiations for a collective bargaining agreement between the city of
·Newton and a police officers' union had reached an impasse on a proposal
by the city that a police officer would forfeit his right to be paid accidental
disability leave under G. L. c. 41, § 111F, if it was determined that the
officer was capable of performing limited duties, within the civil service
job description of a police officer, and the officer failed to perform the
duties, the city was entitled unilaterally to implement its proposal.
[191-193]


CIVIL ACTION commenced in the Superior Court Department
on June 7, 1984.

The case was reported to the Appeals Court by *Elizabeth
A. Porada,* J. The Supreme Judicial Court ordered direct review
on its own initiative.

*Neil Jacobs (Susan Winkler* with him) for the plaintiff.
*Harold F. Kowal* for the city of Newton & others.
The following submitted briefs for amici curiae:
*John P. Reilly* for International Brotherhood of Police Of-
ficers.
*John M. Collins & Stanley L. Weinberg* for Massachusetts
Chiefs of Police Association, Inc.
*Philip Collins & Robert W. Garrett* for Massachusetts
Municipal Association.

---

[1] The mayor and the chief of police for the city of Newton. We refer to
the defendants collectively as "the city."

*Paul J. McCarthy* for Massachusetts Police Association.

*Jonathan P. Hiatt* for Professional Firefighters of Massachusetts.

NOLAN, J. In this case we are presented with a question reported by a Superior Court judge pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974). The question is: "After impasse has been reached, can the City lawfully implement, without the Union's agreement, the City's proposal to modify § 4.04 of the Newton Police Contract which limits police officers' rights to accidental disability leave as provided in M. G. L. c. 41 § 111F?" We answer this question in the affirmative for the reasons set forth below. The record contains a "joint agreed statement of facts" and a "joint amendment to joint agreed statement of facts" from which, in the main, the following summary of facts is drawn.[2]

The Newton branch of the Massachusetts Police Association (association)[3] and the city of Newton (city) were parties to a collective bargaining agreement that was operative from July 1, 1980, through June 30, 1982. In April of 1982, the association and the city began negotiating for a successor agreement. At the first bargaining session, the association introduced its "third-party doctor" proposal seeking a modification of the terms in § 4.04 of the 1980-1982 collective bargaining agreement relating to paid accidental disability leave granted to police officers by G. L. c. 41, § 111F (1984 ed.).[4] Under the

---

[2] We acknowledge the amicus briefs filed on behalf of the Massachusetts Police Association, Massachusetts Chiefs of Police Association, Inc., Professional Firefighters of Massachusetts, International Brotherhood of Police Officers and Massachusetts Municipal Association.

[3] The Newton branch of the Massachusetts Police Association is the Newton police department's exclusive representative for purposes of collective bargaining. See G. L. c. 150E, § 2 (1984 ed.). During the 1982-84 contract period, the bargaining unit was comprised of 240 persons: five captains, eleven lieutenants, twenty sergeants, and 204 patrol officers.

[4] General Laws c. 41, § 111F (1984 ed.), provides in material part: "Whenever a police officer . . . of a city [or] town . . . is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own . . . he shall be granted leave without loss of pay for the period of such incapacity; provided, that no such leave shall be granted for

association's proposed § 4.04, a neutral physician would be required to determine whether a police officer was capable of returning to duty in cases where there was a difference of opinion between the officer's own physician and the physician designated pursuant to G. L. c. 41, § 111F.[5] In 1983, the city made a counter proposal in which it sought to include a "limited duty" clause in the proposed § 4.04. Under the city's submission, a police officer would forfeit his right to paid accidental disability leave if the city's physician determined that the officer was capable of performing limited police duties on either a full or part-time basis and the officer failed to perform the duties. The chief of police was given the authority to prescribe the limited duties.[6]

any period after such police officer . . . has been retired or pensioned in accordance with law or for any period after a physician designated by the board or officer authorized to appoint police officers . . . in such city [or] town . . . determines that such incapacity no longer exists."

[5] The association's proposed § 4.04 provided that "[a] Police Officer who is incapacitated for duty because of injuries sustained in the performance of his duty without fault of his own or a Police Officer assigned to a special duty by his Superior Officer, whether or not he is paid for such special duty by the City and is incapacitated because of injuries so sustained, shall be granted leave of absence without loss of pay for the period of such incapacity. He shall continue to be granted leave without loss of pay after a physician designated by the Mayor determines that such incapacity no longer exists, provided the following process takes place. The employee's physician and the physician designated by the Mayor shall confer as to the continuation of the incapacity. If they disagree as to the continuation of said incapacity, they shall thereupon jointly designate a physician agreeable to both of them who will examine the employee and make a final determination as to whether or not the incapacity continues to exist. Pending receipt of the neutral physician's determination, the employee shall continue to be granted leave without loss of pay for that period. Each party shall pay the costs of its own physician and the parties will equally bear the cost of the neutral physician.

"When a Police Officer is incapacitated for duty because of injuries sustained in the performance of his duty without fault of his own, he shall promptly notify the Chief of Police or such person as the Chief of Police shall designate."

[6] The city's proposed § 4.04 read: "Whenever a police officer is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own, or a police officer assigned to special duty by his superior officers, whether or not he is paid for such special duty by the City

Negotiations continued for approximately two years, but the parties failed to reach an agreement on the "limited duty" modification of the proposed § 4.04. From April of 1983 through March of 1984, the city and the association engaged in mediation and fact finding under the direction of the Commonwealth of Massachusetts Joint Labor-Management Committee. On March 29, 1984, the city, at the association's request, made a final, written proposal for a total contract settlement. The city's provision relating to the modification of the proposed § 4.04 was not acceptable to the association.[7] On March 30, 1984, the city declared an impasse. Shortly thereafter the city, through its attorney, sent the association a letter stating that it intended to implement all the provisions of its final offer on April 30, 1984. In its letter, the city provided the association with an opportunity to negotiate over the impact of its decision or any other matters. There were no further negotiations and the city unilaterally implemented its proposal as scheduled, and delivered a copy of the new contract to the association. The association refused to sign the contract and has not agreed to its implementation. The association filed this action in Superior Court seeking declaratory and injunctive relief regarding the city's unilateral implementation of the disputed "limited duty" provision in § 4.04. The case was reported

is so incapacitated because of injuries so sustained, [the officer] shall be granted leave without loss of pay for the period of such incapacity; provided that no such leave shall be granted for any period after such police officer has been retired or pensioned in accordance with law or for any period after the City Physician determines that such incapacity no longer exists. Provided further that no such leave shall be granted for any period after the City Physician determines that a police officer is capable of performing *limited* police duties on *either* a *full-time* or less than full-time basis and said police officer fails to perform such *limited* duties as may be prescribed in the discretion of the Chief of Police" (emphasis in original).

[7] In its final proposed § 4.04, the city included a third-party physician provision similar to the one requested by the association and agreed to allow officers to remain on paid accidental disability leave until the third physician rendered his opinion. The city also listed the limited duties that officers would be required to perform and represents that all of the listed duties are contained within the civil service job description of a police officer. This is a condition that we believe adequately controls the discretion granted to the chief in making his assignments.

to the Appeals Court on one controlling question of law, and we transferred the case to this court on our own motion.

1. *The duty to bargain.* Collective bargaining negotiations between a public employer and its employees must be conducted in accordance with G. L. c. 150E, § 6 (1984 ed.). This statute provides that "[t]he employer and the exclusive representative shall meet at reasonable times . . . and shall negotiate in good faith with respect to wages, hours, standards or productivity and performance, and any other terms and conditions of employment." The statute further provides that the obligation to meet and negotiate "shall not compel either party to agree to a proposal or make a concession." *Id.*

The association initiated discussions regarding the proposed § 4.04 of the collective bargaining agreement. Since this section involved a condition of employment and was therefor a mandatory subject of collective bargaining, the city was obligated to meet with the association concerning this issue and to negotiate in good faith. G. L. c. 150E, § 6. To fulfil this obligation, the city was required to attend the negotiating sessions with an "open and fair mind" aimed at reaching an agreement. See *School Comm. of Newton* v. *Labor Relations Comm'n,* 388 Mass. 557, 572 (1983). In their joint agreed statement of facts, the parties admit that their negotiations were conducted in good faith and hence we need not address this point. The parties have also agreed, by virtue of the question reported, that their negotiations continued until they reached an impasse. It is well-established that "[a]fter good faith negotiations have exhausted the prospects of concluding an agreement, an employer may implement unilateral changes [in conditions of employment] which are reasonably comprehended within its pre-impasse proposals." *Massachusetts Org. of State Eng'rs & Scientists* v. *Labor Relations Comm'n,* 389 Mass. 920, 927 (1983), quoting *Hanson School Comm.,* 5 M.L.C. 1671, 1675-1676 (1979). See R.A. Gorman, Labor Law 445 (1976).

The thrust of the association's argument, however, is that those rights that are granted by statute and enumerated in G. L. c. 150E, § 7 (*d*), may only be eliminated by a collective bar-

gaining agreement reached between the employer and the employee's exclusive representative. Therefore, the city is precluded from implementing its proposal unilaterally. Since we do not agree that the city's proposed § 4.04 "eliminated" any rights that Newton police officers were granted under G. L. c. 41, § 111F, we need not reach this issue.

2. *General Laws c. 41, § 111F.* As we indicated earlier, the legislative scheme of G. L. c. 41, § 111F, is designed to afford "some protection to a disabled officer pending recovery or pending a severance from employment due to factors beyond the officer's personal control." *Hennessey* v. *Bridgewater,* 388 Mass. 219, 226 (1983). "The statute clearly contemplates, in instances not resulting in retirement or pensioning, a return to duty." *Id.* The statute does not, however, qualify the term "duty" or require the city to continue paying the officer until he is capable of returning to the precise duty assignment he was performing at the time of the incapacitating injury. See G. L. c. 41, § 111F. Relying primarily on our decision in *Votour* v. *Medford,* 335 Mass. 403 (1957), the association argues that a police officer is "incapacitated for duty" under G. L. c. 41, § 111F, until he is capable of performing the "full duties" of a police officer. We disagree. The only issue before this court in *Votour* was whether the trial judge erred in denying three of the city's requests for rulings of law. *Id.* at 405. In its request numbered thirteen, the city asked the trial judge to rule that "[a] finding that the plaintiff . . . is incapacitated for limited rehabilitating police work would be against the weight of the evidence." *Id.* at 405-406 n.1. At trial, a medical report prepared by a panel of three physicians who had examined the plaintiff Votour was admitted in evidence. The report stated that the plaintiff's back condition rendered him totally and permanently disabled from performing "any kind of duty." *Id.* at 405. We held that the evidence warranted the trial judge's finding that the plaintiff was incapacitated for duty.[8] Although we did acknowledge that G. L.

---

[8] The trial judge found that "the plaintiff's back condition is the chief reason that he would be unable to perform the full duties of a police officer

c. 41, § 111F, makes no distinction between total and partial incapacity, this acknowledgement does not support the interpretation of G. L. c. 41, § 111F, urged by the association.[9]

As we read the city's proposal, it affords Newton police officers the same benefits the city is required to provide under G. L. c. 41, § 111F. The proposal does nothing more than allow the chief of police to assign an officer who may be incapacitated for purposes of performing one type of police duty to another which he is fully capable of performing. In its brief the city represents that all of the duty assignments listed in the proposed § 4.04 are contained within the civil service job description of a police officer, and that these assignments are presently being performed by full-time police officers in the Newton police department. If a police officer is not incapacitated from performing any one of the duties to which he might be legally assigned, he is required to perform that duty or forfeit his right to paid accidental disability leave under G. L. c. 41, § 111F.

Moreover, through the city's proposal, Newton police officers are afforded the additional option of having a neutral third physician determine whether they are medically capable of returning to duty. This is a provision that was originally

---

but that even without the back disability the limitation of motion in Votour's right wrist would interfere with the full duties above mentioned." *Votour* v. *Medford,* 335 Mass. at 405. The association relies on this finding to support its position that a police officer is entitled to remain on paid accidental disability leave until he is capable of performing all of the duties a police officer could be required to perform. This is an overbroad interpretation of the holding in *Votour* and not warranted in light of the fact that Votour was totally disabled from "any kind of duty." *Votour, supra* at 405.

[9] A police officer may be partially incapacitated and yet unable to perform any one of the various police duties he might be assigned. Under these circumstances, he would be entitled to paid accidental disability leave under G. L. c. 41, § 111F. On the other hand, an officer who is partially incapacitated and yet fully able to perform an assignment within the job description of a police officer is required to perform that assignment and is not entitled to leave under G. L. c. 41, § 111F. Under the interpretation of G. L. c. 41, § 111F, urged by the association, an officer would be allowed to remain on paid accidental disability leave even though he is medically capable of performing one of the duties within his job description. In our opinion, such an officer would not be "incapacitated for duty."

requested by the association. See note 5, *supra*. Further, in cases of dispute, officers are allowed to remain on paid accidental disability leave until the third physician has rendered his opinion regarding the officer's medical condition. See note 7, *supra*. These provisions afford the officers greater protection than required by G. L. c. 41, § 111F. The city has not eliminated any rights granted under G. L. c. 41, § 111F. We hold that the city was entitled to implement unilaterally its proposal after good faith negotiations with the association had reached an impasse. See *Massachusetts Org. of State Eng'rs & Scientists* v. *Labor Relations Comm'n,* 389 Mass. 920 (1983). See generally Heller, Unilateral Action in a Concession Bargaining Context, 35 Lab. L.J. 747 (1984) (discussing unilateral action).