458 Mass. 155 (2010)                                          155

Boston Housing Authority v. National Conference of Firemen and Oilers, Local 3.

## BOSTON HOUSING AUTHORITY *vs.* NATIONAL CONFERENCE OF FIREMEN AND OILERS, LOCAL 3.

Suffolk. May 4, 2010. - October 22, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Boston Housing Authority. Arbitration,* Vacating award. *Labor,* Public employment, Arbitration, Collective bargaining, Judicial review. *Public Employment,* Collective bargaining. *Statute,* Construction. *Words,* "Evergreen clause."

This court concluded that a so-called "evergreen clause" contained in a lapsed collective bargaining agreement (CBA) between the plaintiff public employer and the defendant representative of a collective bargaining unit (unit), continuing the terms and conditions of employment of the CBA during a period of negotiations that took place under a memorandum of agreement between the parties, was rendered invalid by G. L. c. 150E, § 7 (*a*), which prohibits extending the duration of a CBA beyond three years; therefore, given that the grievance and arbitration provision of the CBA had lapsed, an arbitrator lacked jurisdiction to arbitrate the unit's grievance in the first instance. [162-165] BOTSFORD, J., dissenting, with whom IRELAND, J., joined.

CIVIL ACTION commenced in the Superior Court Department on June 4, 2008.

The case was heard by *Linda E. Giles,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Kay H. Hodge* (*John M. Simon* with her) for the plaintiff.

*Ira Sills* (*Nicole Horberg Decter* with him) for the defendant.

*John M. Becker & Patrick N. Bryant,* for Massachusetts Coalition of Police, AFL-CIO, amicus curiae, submitted a brief.

SPINA, J. In this action pursuant to G. L. c. 150C, § 11, the Boston Housing Authority (BHA) seeks to vacate the award of an arbitrator who concluded that the BHA violated the minimum staffing provision of its collective bargaining agreement (CBA) with the National Conference of Firemen and Oilers, Local 3 (Local 3), when it laid off all sixteen members of the bargaining

unit. The arbitrator ordered the BHA to reinstate these employees with full back pay and benefits. A judge in the Superior Court denied the BHA's motion to vacate the arbitration award, and allowed Local 3's motion to confirm the award. Judgment entered on findings of the court. The BHA appealed, and we granted its application for direct appellate review. Because we conclude that the arbitrator exceeded the scope of his authority, we reverse the judgment and remand for entry of an order vacating the award.

1. *Background.* We summarize the facts as found by the arbitrator, supplemented where necessary by undisputed aspects of the record. See *New Bedford* v. *Massachusetts Comm'n Against Discrimination*, 440 Mass. 450, 452 (2003). The BHA is a public employer within the scope of G. L. c. 150E, which permits nonmanagerial employees to form and join labor organizations and to bargain collectively over wages and working conditions. It is managed by an administrator who is appointed by the mayor of Boston; the administrator has no fixed term of office and serves at the pleasure of the mayor. The mission of the BHA is to provide housing assistance to low income residents of Boston. It is funded by Federal and State grants, as well as by tenants' rent. Approximately eighty per cent of the BHA's properties are federally subsidized by the Department of Housing and Urban Development. These Federal appropriations are subject to political considerations and, therefore, are unpredictable. As a consequence, when planning their budgets, housing authorities may not know the precise extent of their Federal funding until after a fiscal year has begun.

The Federal appropriations are divided into two parts: (1) operating funds, which are used to maintain and operate the subsidized properties; and (2) capital funds, which are used to improve the properties. State funding for the BHA is appropriated by the Legislature through the Department of Housing and Community Development. When the BHA acquires a property, a base level of funding is determined, and then it is adjusted annually without a detailed reexamination of the property's particular operating needs. The fiscal year (FY) of the BHA is from April 1 through March 31, and budget preparations begin in the late summer or early fall.

For approximately thirty-five years, Local 3 has represented a

bargaining unit comprised of low pressure firemen and stationary engineers (collectively, firemen) employed by the BHA. The traditional function of these employees was to operate and maintain high pressure heating systems at BHA properties. The BHA gradually phased out these high pressure systems and replaced them with new heating systems that did not require the use of licensed firemen for operation and maintenance. The number of firemen employed by the BHA declined commensurately. By 2000, there were no high pressure systems left, so the primary duties of the remaining firemen were to observe and report on the condition of the newer heating systems, rather than to operate or maintain them.

Local 3 and the BHA have entered into numerous CBAs over the years. Each of the last seven CBAs was executed well after the preceding agreement had expired according to its fixed term. In each case, terms and conditions of employment were continued pursuant to a so-called "evergreen clause" included in the former agreement, which stated that during any period of negotiations between the parties, the terms of the prior agreement would remain in full force and effect until a new agreement was signed. The most recent CBA between Local 3 and the BHA had a fixed term from April 1, 1998, through March 31, 2001, and included an evergreen clause.[1]

In May, 2003, the parties executed a memorandum of agreement (MOA), which carried forward many of the provisions of the 1998-2001 CBA and amended or added several others.[2] One such addition, set forth in "Attachment A" of the MOA, was a provision that required the BHA to maintain "a staffing level of sixteen positions . . . for the term of the present collective bargaining agreement (April 1, 2001 — March 31, 2004)." This minimum staffing provision appeared to be part of a broader compromise between Local 3 and the BHA.

---

[1]Article XXI of the collective bargaining agreement (CBA), entitled "Duration of Agreement," stated: "This Agreement shall take effect on April 1, 1998 and shall remain in effect until March 31, 2001. During any period of negotiations between the parties hereto, the provisions of this Agreement shall remain in full force and effect until such time as a new Agreement has been signed. Such negotiations will be conducted in good faith."

[2]Paragraph 14 of the memorandum of agreement (MOA) stated: "The balance of the terms of the agreement for the period of April 1, 1998 through March 31, 2001 shall remain in full force and effect."

In January, 2004, before the MOA was set to expire on March 31, 2004, according to its fixed term, Local 3 notified the BHA of its intention to negotiate a new CBA. The parties met nine times over the next two years but were unable to reach an agreement. There was no evidence of any bad faith bargaining. Neither party declared an impasse. During negotiations, the BHA sought to eliminate both the minimum staffing language from "Attachment A" of the MOA and the evergreen clause set forth in the 1998-2001 CBA. Local 3 did not agree to either of these proposals.

By January, 2006, the BHA learned that its Federal funding for FY 2007 likely would not be the full amount of its expected subsidy. Anticipating a budget deficit of at least $10.5 million, the BHA proposed eliminating all sixteen firemen, which would save the BHA approximately $1.2 million per year.[3] The BHA notified Local 3 of its intention to lay off the firemen, and the parties met three times to exchange proposals on the impact of this decision. The final proposal from each side was rejected by the other side.[4] On April 30, 2006, the BHA laid off all sixteen firemen, citing fiscal concerns and the lack of any need for such employees. Local 3 filed a grievance asserting that, by terminating the firemen, the BHA had violated numerous provisions of the MOA which, in Local 3's view, was still in force. The BHA denied the grievance, and Local 3 submitted the matter to arbitration.

Following several hearings, the arbitrator issued his award on May 12, 2008.[5] He first determined that, contrary to the BHA's suggestion, the duration of "Attachment A," setting forth the

[3]After adjustments to its projected Federal funding, the Boston Housing Authority's (BHA's) actual deficit for fiscal year (FY) 2007 was $1.2 million. The arbitrator noted that operating deficits had been the rule since 1996, and that the deficit for FY 2007 was not among the largest experienced by the BHA.

[4]The National Conference of Firemen and Oilers, Local 3 (Local 3), proposed a package that would have reduced the bargaining unit from sixteen to twelve employees, eliminated the minimum staffing language, and provided for voluntary layoffs and severance. The BHA proposed retaining two firemen for as long as those individuals remained employed.

[5]On March 30, 2007, the arbitrator issued an interim award based on a jurisdictional challenge by the BHA. The BHA asserted that, at the time of the events giving rise to the grievance, there was no valid CBA in effect, and, therefore, no agreement to arbitrate. The arbitrator stated that the MOA carried forward the grievance procedure set forth in the 1998-2001 CBA, and

minimum staffing provision, was concurrent with the other provisions of the MOA and did not expire separately on March 31, 2004. The arbitrator next determined that, pursuant to the unambiguous language of paragraph 14 of the MOA, see note 2, *supra,* the evergreen clause from the 1998-2001 CBA carried forward and was incorporated into the MOA. He stated that although the fixed term of the MOA was from April 1, 2001, to March 31, 2004, this contract, like a number of others that had preceded it, was to "remain in full force and effect" during "any period of negotiations" for a new agreement, and that long after March 31, 2004, the BHA continued to act as if the MOA was in force. Further, the arbitrator continued, the record was clear that when the BHA decided to lay off the firemen, the parties were still in negotiations. Given his finding that the MOA was in effect on April 30, 2006, the arbitrator next determined that the minimum staffing provision set forth in "Attachment A" was an express limitation on the BHA's right to lay off the firemen, and that the fiscal and operational changes cited by the BHA to justify such layoffs had existed prior to the BHA's agreeing to the minimum staffing language. As such, the arbitrator continued, the BHA violated the terms of the MOA when it laid off the firemen. The arbitrator pointed out that the BHA had sought no relief prior to acting unilaterally, and that if the parties had reached a good faith impasse, then the BHA could have

that the MOA remained in effect in 2006 because the parties were still negotiating a successor agreement. Further, he continued, it would be inappropriate for an arbitrator to decline to enforce a contract provision (here, the evergreen clause) agreed to by the parties and supported by decisions from the Labor Relations Commission based on the arbitrator's own first impression interpretation of "outside law," namely G. L. c. 150E, § 7 (*a*) (imposing three-year term limit on CBAs). The arbitrator stated that, unless enjoined from doing so, he would take whatever evidence remained on the jurisdictional issue during the next scheduled hearing and then proceed to the merits of the case. The BHA filed a verified complaint in the Superior Court pursuant to G. L. c. 150C, § 2 (*b*), seeking a stay of the arbitration because, in the BHA's view, there was no valid agreement to arbitrate Local 3's grievance. It also filed an emergency motion for a temporary restraining order or, in the alternative, for a preliminary injunction. A Superior Court judge denied the BHA's request for injunctive relief or for a temporary restraining order. Following a subsequent hearing on April 3, 2007, the arbitrator issued a second interim award on May 8, 2007. He concluded that Local 3's grievance was subject to arbitration, that the evergreen clause was not rendered invalid or unenforceable by G. L. c. 150E, § 7 (*a*), and that the arbitration hearing should proceed on the merits.

implemented its impasse position. Finally, the arbitrator stated that neither the evergreen clause nor the minimum staffing provision appeared to be an illegal contract provision that was unenforceable, and that if the parties' agreement was to be invalidated, then that decision should come from a court, not an arbitrator. The arbitrator ordered the BHA to reinstate the sixteen firemen with full back pay and benefits.

On June 4, 2008, the BHA filed in the Superior Court a complaint to vacate the arbitration award pursuant to G. L. c. 150C, § 11, on the grounds that the arbitrator exceeded his authority and ordered the BHA to engage in conduct prohibited by State law. The BHA claimed that because G. L. c. 150E, § 7 (*a*), limits the term of a CBA to three years, the MOA expired by law on March 31, 2004, and, consequently, there was no agreement in force to permit the arbitration of Local 3's grievance or to preclude the BHA's layoff of the firemen. Alternatively, the BHA asserted that, by enforcing the MOA's minimum staffing provision, the arbitration award impermissibly intruded on the BHA's nondelegable managerial rights as a housing authority under G. L. c. 121B and violated public policy considerations pertaining to fiscal responsibility and operational efficiency. Local 3 filed a counterclaim to confirm the award pursuant to G. L. c. 150C, § 10. Subsequently, on October 27, 2008, the BHA filed a motion to vacate the arbitration award, asserting, in addition to the claims already raised in its earlier complaint, that the arbitrator limited his decision to his interpretation of the words of the parties' agreement and expressly refused to consider the BHA's arguments that "outside law," namely G. L. c. 150E, § 7 (*a*), rendered the minimum staffing provision illegal and unenforceable.[6] In response, Local 3 filed a motion to confirm the arbitration award.[7]

---

[6]In its memorandum of law in support of its motion to vacate the arbitration award, the BHA stated that it did not challenge any of the arbitrator's factual findings or conclusions, but merely sought the court's consideration of legal arguments that the arbitrator "expressly refused to decide and left for judicial determination." The BHA has made the same statement in its brief in the present appeal.

[7]On January 6, 2009, the parties filed joint motions to consolidate their earlier action in the Superior Court, pertaining to the BHA's efforts to enjoin the arbitration hearing between the parties, see note 5, *supra*, with the present matter. The motions were allowed.

In a detailed memorandum of decision and order dated February 24, 2009, a judge denied the BHA's motion to vacate the arbitration award and allowed Local 3's motion to confirm the award. The judge was persuaded that there was no conflict between G. L. c. 150E, § 7 (*a*), which states that a CBA shall not exceed a term of three years, and an evergreen clause, which merely provides for a continuing code of conduct between the parties while a new agreement is being negotiated. Next, the judge stated that because the record seemed to indicate that the BHA does not require legislative approval for each expenditure it makes, the BHA had discretionary authority to prioritize its own budget items and could freely commit to a minimum staffing provision that guaranteed job security to sixteen firemen. Finally, the judge stated that enforcement of the arbitration award would not violate any well-established public policy, even when considering the BHA's budgetary constraints and the fact that the firemen's positions had become "virtually obsolete." In the judge's view, the BHA had not directed the court to any laws or legal precedents that would excuse its performance under a labor agreement simply because, in hindsight, it had agreed to imprudent terms.

2. *Standard of review.* Generally speaking, an arbitrator enjoys considerable latitude in fashioning an arbitration award. See *School Comm. of Newton* v. *Newton Sch. Custodians Ass'n, Local 454,* 438 Mass. 739, 752 (2003). Absent one of the narrowly circumscribed grounds set forth in G. L. c. 150C, § 11 (*a*), for vacating an arbitration award, we are bound by the arbitrator's factual findings and legal conclusions, even if they are erroneous. See *School Comm. of Pittsfield* v. *United Educators of Pittsfield,* 438 Mass. 753, 758 (2003); *Lynn* v. *Thompson,* 435 Mass. 54, 61-62 (2001), cert. denied, 534 U.S. 1131 (2002). Pursuant to § 11 (*a*) (3), an arbitration award shall be vacated if the arbitrator "exceeded [his] powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law." The question whether an arbitrator acted in excess of his authority is always open for judicial review. See *School Comm. of Waltham* v. *Waltham Educators Ass'n,* 398 Mass. 703, 705-706 (1986); *School Comm. of W. Springfield* v. *Korbut,* 373 Mass. 788, 792 (1977).

3. *Discussion.* We begin with the statute that is integral to the disposition of the present matter. General Laws c. 150E, § 7 (*a*), which governs collective bargaining between public employees and public employers, provides, in relevant part: "Any collective bargaining agreement reached between the employer and the exclusive representative shall not exceed a term of three years." See *Boston Teachers Union, Local 66* v. *School Comm. of Boston,* 386 Mass. 197, 203-204 (1982) (G. L. c. 150E, § 7, "authorizes collective bargaining agreements for up to three years' duration").

The BHA contends that the arbitration award must be vacated because the minimum staffing provision in "Attachment A" of the MOA could not be enforced where the MOA expired by its fixed term on March 31, 2004. In the BHA's view, the evergreen clause, which purported to continue the terms of the MOA, including the minimum staffing provision and the grievance and arbitration procedures, during the period of negotiations between the parties for a successor agreement, violated the unambiguous language of G. L. c. 150E, § 7 (*a*). As such, the BHA continues, the arbitrator exceeded the scope of his authority in ordering the BHA to reinstate the firemen with full back pay and benefits. We agree.

It is a fundamental canon of statutory construction that "statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." *Sullivan* v. *Brookline,* 435 Mass. 353, 360 (2001). See *O'Brien* v. *Massachusetts Bay Transp. Auth.,* 405 Mass. 439, 443-444 (1989). Words are to be accorded their ordinary meaning and approved usage. See *Pyle* v. *School Comm. of S. Hadley,* 423 Mass. 283, 286 (1996). Where, as here, the language of a statute is unambiguous, it is conclusive as to the intent of the Legislature. See *id.* at 285. We do not look to extrinsic sources to vary the meaning of an unambiguous statute unless a literal construction would yield an absurd or unworkable result. See *Department of Community Affairs* v. *Massachusetts State College Bldg. Auth.,* 378 Mass. 418, 427 (1979).

The unambiguous language of G. L. c. 150E, § 7 (*a*), reveals a clear legislative intent to limit the term of a CBA to not more than three years. This limitation serves several important and

beneficial purposes, including giving employees the opportunity to reevaluate their choice of a bargaining representative at regular intervals; compelling the parties to reassess the terms of their CBA at least once every three years; preventing public employers from unduly tying the hands of their successors in dealing with changing and challenging circumstances; and protecting the public interest in the proper management of limited public resources and the efficient provision of government services. See, e.g., *Town of Burlington*, 3 M.L.C. 1440, 1441 (1977).

The fixed term of the MOA was from April 1, 2001, through March 31, 2004. The evergreen clause provided that, during any period of negotiations between the parties, the provisions of the MOA would remain in full force and effect until a new CBA was signed. We recognize that an evergreen clause is designed to maintain the status quo in labor relations and provide for a continuing code of conduct while parties negotiate a new bargaining agreement. See *Gustafson* v. *Wachusett Regional Sch. Dist.*, 64 Mass. App. Ct. 802, 809-810 n.11 (2005) (one labor law technique for avoiding gaps of time between bargaining agreements is use of evergreen clause); *Town of Burlington, supra* (evergreen clause "fosters labor peace" while new agreement under negotiation). However, the effect of an evergreen clause is to preserve and maintain all the provisions of a CBA, thereby extending its duration beyond three years, which is prohibited by G. L. c. 150E, § 7 (*a*). "Contract provisions which go beyond the scope of [a] statute are void."[8] *White Constr. Co.* v. *Commonwealth*, 11 Mass. App. Ct. 640, 648 (1981), *S.C.*, 385 Mass. 1005 (1982).

---

[8]In the context of public employee labor relations, G. L. c. 150E, § 7 (*d*), states, among other things, that if a CBA contains a conflict between matters that are within the scope of negotiations pursuant to G. L. c. 150E, § 6 (pertaining to terms and conditions of employment), and certain enumerated statutory provisions, then the terms of the agreement shall prevail over the statute. The duration of a CBA is not, strictly speaking, a term or condition of employment (such as wages and hours) subject to negotiation under G. L. c. 150E, § 6. Moreover, G. L. 150E, § 7 (*a*), is not among the enumerated statutory provisions that is trumped by the terms of a CBA. "[S]tatutes not specifically enumerated in § 7 (*d*) will prevail over contrary terms in collective bargaining agreements." *Commonwealth* v. *Labor Relations Comm'n*, 404 Mass. 124, 126 (1989). See *Chief Justice for Admin. & Mgt. of the Trial Court* v. *Office & Professional Employees Int'l Union, Local 6*, 441 Mass. 620, 625-626 (2004).

The purported policy benefits of an evergreen clause cannot trump the intent of the Legislature, as unambiguously expressed in § 7 (*a*), to limit the term of a CBA to no more than three years. To the extent that the Commonwealth Employment Relations Board (formerly the Labor Relations Commission) has determined that an evergreen clause may extend the term of a CBA beyond three years,[9] that determination is inconsistent with § 7 (*a*) and, therefore, not controlling. See *Kszepka's Case*, 408 Mass. 843, 847 (1990) ("An incorrect interpretation of a statute by an administrative agency is not entitled to deference"); *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 441 n.22 (1972) (statutory interpretation by administrative agency not followed where contrary to unambiguous terms of statute). "The duty of statutory interpretation rests ultimately with the courts." *Town Fair Tire Ctrs., Inc.* v. *Commissioner of Revenue*, 454 Mass. 601, 605 (2009). As such, we conclude that G. L. c. 150E, § 7 (*a*), renders an evergreen clause invalid.

Local 3's reliance on *National Ass'n of Gov't Employees* v. *Commonwealth*, 419 Mass. 448, cert. denied, 515 U.S. 1161 (1995), for the proposition that we have recognized the validity of an evergreen clause notwithstanding G. L. c. 150E, § 7 (*a*), is misplaced. In that case, the parties did not dispute the assumption that three CBAs remained in effect past their expiration dates because each agreement contained an evergreen clause. See *id.* at 450-451. Consequently, this court did not consider the issue whether the evergreen clause violated § 7 (*a*). Similarly, *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 414 Mass. 323 (1993), is inapposite where the Massachusetts Bay Transportation Authority (MBTA) specifically is excluded as an "employer" subject to the provisions of G. L. c. 150E, and where there is no statutory term limit on CBAs under G. L. c. 161A, which governs the MBTA. See G. L. c. 150E, § 1; G. L. c. 161A, § 25.

General Laws c. 150E, § 9, states that "nothing contained herein shall prohibit the parties from extending the terms and conditions of such a collective bargaining agreement by mutual agreement for a period of time in excess of the aforementioned

---

[9]See, e.g., *Massachusetts Coalition of Police*, 16 M.L.C. 1630, 1632 n.3 (1990); *Town of Burlington*, 3 M.L.C. 1440, 1441 (1977).

time." This provision is wholly consistent and in accordance with G. L. c. 150E, § 7 (*a*), in that the duration of a CBA shall not exceed three years, but once that fixed term has expired, the parties are free to enter into a subsequent agreement extending the prior terms and conditions of their agreement, thereby maintaining the status quo while negotiations for a new CBA are ongoing. See, e.g., *Gustafson* v. *Wachusett Regional Sch. Dist.*, *supra* at 806-807 (bridge agreement between parties preserved terms of prior collective bargaining agreement until successor agreement ratified).

As we have stated, the MOA expired according to its fixed term on March 31, 2004. In light of our conclusion that the evergreen clause was invalid because it violated the clear mandate of G. L. c. 150E, § 7 (*a*), the provisions of the parties' bargaining agreement did not remain in full force and effect until such time as a new agreement was signed. It follows that the grievance and arbitration provision lapsed when the MOA expired. The arbitrator, therefore, exceeded his authority in ordering the BHA to reinstate the firemen because he had no jurisdiction to arbitrate Local 3's grievance in the first instance.[10] Moreover, by mandating compliance with the minimum staffing provision set forth in "Attachment A," the arbitrator required the BHA to extend the provisions of the MOA past three years in violation of § 7 (*a*).

4. *Conclusion.* The judgment is reversed, and this case is remanded to the Superior Court for entry of an order vacating the arbitration award.

*So ordered.*

BOTSFORD, J. (dissenting, with whom Ireland, J., joins). I agree with the court that G. L. c. 150E, § 7 (*a*) (§ 7 [*a*]), bars public employers and public employees from entering into a collective bargaining agreement (CBA) with a stated term of more than

---

[10]Given this conclusion, we need not, and therefore do not, consider the BHA's contention that a minimum staffing provision is enforceable for only one fiscal year. Further, we do not address whether the BHA committed any unfair labor practices when it laid off the firemen on April 30, 2006, and we do not speculate about Local 3's rights with respect to any subsequent proceedings under G. L. c. 150E, § 10, pertaining to prohibited practices.

three years. But the court today expands the scope of this statutory term limit to preclude the contracting parties from including in their CBA a provision, namely an "evergreen clause," that the court itself agrees is intended to serve as "a continuing code of conduct while parties negotiate a new bargaining agreement." *Ante* at 163. Section 7 (*a*) contains no direct prohibition against such a provision in a three-year CBA. In reaching its construction of § 7 (*a*), the court turns its back on the reasonable interpretation that the Labor Relations Commission (now division of labor relations [division])[1] has followed for decades, finding consistency between an evergreen clause and the provisions of § 7 (*a*); public sector employers and unions, including the parties to the present case, have long relied on that interpretation. The court also, in my view, ignores "the unique nature of the employer-employee relationship in the public sector," *Massachusetts Org. of State Eng'rs & Scientists* v. *Labor Relations Comm'n*, 389 Mass. 920, 927 (1983), and the special public policy considerations that animate it. I disagree with the court's interpretation of § 7 (*a*), and therefore respectfully dissent.

1. Although the court recites the background facts of this case, it is useful to highlight some of them to provide context to the questions of statutory interpretation at issue.[2] For more than thirty years — since at least 1978 — the CBAs between the Boston Housing Authority (BHA) and the National Conference of Firemen and Oilers, Local 3 (Local 3), have had a stated term of between two and three years,[3] and have contained an identically worded clause, the evergreen clause, providing that "[d]uring any period of negotiations between the parties hereto, the provisions

---

[1]The Labor Relations Commission has been subsumed into the division of labor relations of the Department of Labor (division).

[2]These facts are taken from those found by the arbitrator, supplemented by undisputed information in the record.

[3]The affidavit of Thomas Brassil, who served as business agent for Local 3 from 1978 to October, 2001, includes a chart reflecting the stated terms of each collective bargaining agreement (CBA) in effect between the BHA and Local 3 from 1978 to the present, and also the time period the provisions of each CBA remained in effect. The first CBA listed, with an execution date of May 24, 1979, had a stated term that went from October 1, 1978, to May 31, 1982, more than three years. All the other contracts had stated terms for three or fewer years. There is no explanation provided for the longer term of the first contract, but it appears to be an anomaly.

458 Mass. 155 (2010)                                              167

Boston Housing Authority *v.* National Conference of Firemen and Oilers, Local 3.

of this Agreement shall remain in full force and effect until such time as a new agreement has been signed. Such negotiations will be conducted in good faith."[4]

The parties' most recent CBA, namely, the memorandum of agreement (MOA), had a stated term from April 1, 2001, to March 31, 2004. After Local 3 gave notice in January, 2004, of its intent to negotiate a new CBA, the parties met in negotiation sessions nine times, until April, 2006, without reaching agreement. In the meantime, the parties continued to operate under the provisions of the 2001-2004 MOA, and there is no indication the BHA suggested in those negotiating sessions that the MOA's provisions were no longer in effect. Rather, in connection with these negotiations, one of the BHA's proposals for the new CBA was to eliminate the evergreen clause, but Local 3 did not agree. In late January, 2006, in response to what it deemed a fiscal crisis, the BHA notified Local 3 that it intended to lay off all sixteen firemen covered by the minimum staffing provision in Attachment A to the MOA. The BHA met with Local 3 three times over the layoffs, with each side offering one or more counterproposals that were not accepted by the other. Then, based on the stated reasons of lack of need for the firemen and fiscal issues, the BHA unilaterally implemented the layoffs. It was in responding to Local 3's 2006 grievance over the firemen's termination that the BHA *first* asserted its claim that there was no CBA in effect between the parties after March 31, 2004, because the evergreen clause contravened § 7 (*a*), and therefore the BHA was not obligated to honor the minimum staffing provision in the MOA's Attachment A.

2. The pertinent language in § 7 (*a*) is the following: "Any collective bargaining agreement reached between the employer and the exclusive representative shall not exceed a term of three years." The court states that this language is clear, and goes on to conclude — by employing the oft-repeated rubric of statutory interpretation that where the words of a statute are clear, the "[language] is conclusive as to the intent of the Legislature," and the court will not look to extrinsic sources — that the

---

[4]As the court states, with respect to the 2001-2004 memorandum of agreement (MOA) between the parties, the arbitrator found that it incorporated the evergreen clause contained in the parties' 1998-2001 CBA. See *ante* at 159.

evergreen clause in the MOA was unenforceable because it violated "the unambiguous language of G. L. c. 150E, § 7 (*a*)." *Ante* at 162. While I agree that the language of § 7 (*a*) provides clarity on the point that parties to a CBA may not contract for longer than three years, the language itself does not lead to the conclusion drawn by the court. Rather, the section is silent on the question whether a limit on the length of a contract precludes the enforcement of an evergreen clause.

Section 7 (*a*) is part of G. L. c. 150E, a comprehensive statutory scheme regulating public employee collective bargaining. See *Keane* v. *City Auditor of Boston*, 380 Mass. 201, 208 (1980). Its meaning deserves to be considered in a broader context than the court has provided. "[T]ime and again we have stated that we should not accept the literal meaning of the words of a statute without regard for that statute's purpose and history." *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006), quoting *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 (1986). Citing the division's decision in *Town of Burlington*, 3 M.L.C. 1440 (1977), the court essentially adopts the division's articulation of the purposes served by § 7 (*a*): to give employees the ability to choose new bargaining representatives every three years, and protect the employer and incumbent union from too-frequent elections[5]; to require reassessment by the parties of the CBA at least once every three years; and to "prevent[] a governing body from unduly tying the hands of its successors." *Town of Burlington*, 3 M.L.C. at 1441. See *ante* at

---

[5]There is some legislative history to support this first purpose. In the legislation enacting G. L. c. 150E, see St. 1973, c. 1078, the Legislature made clear that it was directly replacing sections of the prior public sector collective bargaining law, G. L. c. 149, §§ 178D, 178F-178N, with the new chapter. See St. 1973, c. 1078, §§ 1, 2. As Local 3 points out, the prior law did not contain any language limiting the durational term of CBAs, but did contain a "contract bar" provision expressly prohibiting any election of a new union to become the exclusive bargaining representative of public employees during the term of an existing CBA. See G. L. c. 149, § 178H (3), as amended by St. 1967, c. 746. The three-year term in § 7 (*a*) of the new G. L. c. 150E ensured that new elections could take place within a reasonable time period — three years — and thereby served the interests of all parties. The division has determined that evergreen clauses are consistent with this purpose, because the clauses do not preclude representation elections every three years. See, e.g., *Brockton Sch. Comm.*, 4 M.L.C. 1005, 1007 (1977); *University of Mass.*, 2 M.L.C. 1001, 1004 (1975); *City of Somerville*, 1 M.L.C. 1312, 1314 (1975).

163. The court, however, summarily rejects the conclusion articulated by the division in its *Town of Burlington* decision, that an evergreen clause is consistent with these statutory purposes, and does not violate the three-year term provision in § 7 (*a*).

We have long recognized that the division, the State agency charged with the responsibility of implementing G. L. c. 150E, see G. L. c. 23, § 9R, has specialized knowledge and expertise in labor relations, and, as a result, its decisions are entitled to substantial deference. See *Worcester* v. *Labor Relations Comm'n*, 438 Mass. 177, 180 (2002); *Boston Police Superior Officers Fed'n* v. *Labor Relations Comm'n*, 410 Mass. 890, 892 (1991); *Quincy City Hosp.* v. *Labor Relations Comm'n*, 400 Mass. 745, 748-749 (1987); *Boston Teachers Union, Local 66* v. *Boston*, 44 Mass. App. Ct. 746, 752 (1998). Such deference is particularly appropriate where, as here, "statutory lacunae exist." *Middleborough* v. *Housing Appeals Comm.*, 449 Mass. 514, 523 (2007) (where there is statutory gap, agency charged with administration of statute is to spell out details of legislative policy).

As just mentioned, the division has upheld the validity of evergreen clauses under § 7 (*a*), and has done so consistently since 1977. See *Town of Burlington*, 3 M.L.C. at 1441. See, e.g., *Massachusetts Coalition of Police, AFL-CIO, Local 170*, 16 M.L.C. 1630, 1632 n.3 (1990). In *Town of Burlington*, the division explained that an evergreen clause is consistent with the statutory language regarding contract terms of three years because the clause merely provides a "mechanism and procedure to be followed prior to the execution of a successor agreement." *Town of Burlington, supra* at 1441.

Resting on its view that the statutory language is "unambiguous[]," the court simply states that the division's previous determinations that an evergreen clause is not inconsistent with § 7 (*a*) are "not controlling." *Ante* at 164. I disagree. For a number of reasons, including that an evergreen clause may or may not become operable at the end of a CBA — it only takes effect in the circumstance where the parties have not reached a new agreement at the end of the original contract term and remain in good faith negotiations to do so; and that an evergreen clause merely allows the provisions of a CBA to continue to govern relations between parties during an interim period of

170             458 Mass. 155 (2010)

Boston Housing Authority v. National Conference of Firemen and Oilers, Local 3.

negotiations, culminating in either a new agreement or impasse, I am persuaded that there is no inherent inconsistency between an evergreen clause and § 7 (*a*). In my view, the division's interpretation of § 7 (*a*) is a reasonable one to which this court should defer.[6]

While the court rejects the parties' evergreen clause — and by extension, all evergreen clauses — it points to a provision in G. L. c. 150E, § 9, that authorizes parties to a CBA to extend the contract "by mutual agreement for a period of time in excess of the aforementioned time." In the court's view, this statutory provision is in accordance with § 7 (*a*), because, the court states, it authorizes parties, after a CBA has expired, to enter into "a subsequent agreement extending the prior terms and conditions of their agreement, thereby maintaining the status quo while negotiations for a new CBA are ongoing." *Ante* at 164-165. Considered as a whole, G. L. c. 150E, § 9, offers more support for the validity of an evergreen clause than for its rejection. Section 9 provides a detailed set of procedures — including mediation, fact finding, and arbitration — that parties to a public sector CBA may seek to activate when one or more of them believe they have reached impasse in negotiating over the terms of the agreement. The section does not require that the parties' CBA have ended before its provisions may be invoked, and — to put the portion of § 9 quoted by the court in context — the statute expressly states that when a petition is filed under its provisions

> "for a determination of an impasse following negotiations for a successor agreement, *an employer shall not implement*

---

[6] In the circumstances of this case, the court's focus on the "unambiguous[]" nature of § 7 (*a*) is misleading. As indicated in the text, the words used by the Legislature may be clear as far as they go, but the issue here concerns a point on which the statute is silent. As to that point, the fact that for more than thirty years, the agency has adopted a construction of § 7 (*a*) that differs from the court's by itself indicates that the statute is not so clear when applied to the particular question we are considering. See *New England Med. Ctr. Hosp., Inc.* v. *Commissioner of Revenue*, 381 Mass. 748, 750 (1980), quoting *Hutton* v. *Phillips*, 45 Del. 156, 160 (1949) (statute unambiguous if "virtually anyone competent to understand it, and desiring fairly and impartially to ascertain its signification, would attribute to the expression in its context a meaning such as the one we derive, rather than any other; and would consider any different meaning, by comparison, strained, or far-fetched, or unusual, or unlikely").

*unilateral changes until the collective bargaining process, including mediation, fact finding or arbitration, if applicable, shall have been completed and the terms and conditions of employment shall continue in effect until the collective bargaining process, including mediation, fact finding or arbitration, if applicable, shall have been completed*; provided, however, that nothing contained herein shall prohibit the parties from extending the terms and conditions of such a collective bargaining agreement by mutual agreement for a period of time in excess of the aforementioned time" (emphasis added).

G. L. c. 150E, § 9, ninth par.

Parties to a CBA engaged in negotiating the terms of a successor agreement are not required to follow the procedural regime set out in G. L. c. 150E, § 9, and I recognize that "the terms and conditions" of a CBA may encompass something less than every provision of the agreement. But the important point is that § 9 recognizes the need to maintain the status quo and provide for continuity while negotiations over a new CBA are ongoing, *without* waiting until the old agreement has expired and the parties are left in limbo. That, of course, is also the purpose of the evergreen clause.[7] As a matter of policy, the evergreen clause, like the quoted provisions of G. L. c. 150E, § 9, avoid "uncontracted-for gaps of time between bargaining agreements," *Gustafson* v. *Wachusett Regional Sch. Dist.*, 64 Mass. App. Ct. 802, 809-810 n.11 (2005), and "[foster] labor peace by providing a continuing code of conduct while a new agreement is under negotiation." *Town of Burlington*, 3 M.L.C. at 1441. Moreover, keeping in mind the strong policy in favor of collective bargaining between public employers and employees, see, e.g., *Somerville* v. *Somerville Mun. Employees Ass'n*, 451 Mass. 493, 496 (2008), it bears emphasis that the evergreen clause included in the MOA here was the result of mutual bargaining, whereby the parties offered consideration and at least one party likely compromised or otherwise made a concession to obtain the inclusion of the clause.

---

[7]The parties are subject to the requirement of good faith bargaining under the explicit terms of the evergreen clause. Accordingly, one party is prevented from indefinitely stalling negotiations simply because it benefited from the terms of the prior agreement that was being preserved by the evergreen clause.

When interpreting § 7 (*a*) in relation to the evergreen clause, these types of public policy considerations should be weighed in the balance. This court and the Appeals Court have recognized the special nature of collective bargaining in the public sector, where employees are not permitted to strike but perform services important to the public. See *Gustafson* v. *Wachusett Regional Sch. Dist.*, 64 Mass. App. Ct. at 809-810 n.11. Cf. *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 414 Mass. 323, 326-327 (1993).[8] Cf. also *Massachusetts Org. of State Eng'rs & Scientists* v. *Labor Relations Comm'n*, 389 Mass. 920, 927 (1983); *Boston Teachers Union, Local 66* v. *Boston*, 44 Mass. App. Ct. at 754-755. The court, however, does not undertake any evaluation of these concerns. Nor does it consider the implication that its decision will have on the settled expectation of public sector employees and employers that evergreen clauses tied to the negotiation of a new agreement are permissible. Its failure to do so not only ignores our precedent, but may well have unfortunate consequences for employers, employees, and the public arising from uncertainty

---

[8]In *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 414 Mass. 323 (1993), this court discussed a "rollover" provision in a CBA between the Massachusetts Bay Transportation Authority (MBTA) and its employees, which stated that the provisions of the CBA "shall continue in force 'from year to year thereafter unless changed by the parties.' " *Id.* at 326. Finding the "rollover" provision to be valid, this court concluded that the MBTA could not terminate unilaterally the CBA simply by giving notice. *Id.* at 326-327. The court wrote: "Where a strike would be unlawful, or at least arguably so, and arbitration is mandated for the ultimate resolution of disputes concerning the terms of a collective bargaining agreement . . . and where the public interest in uninterrupted mass transit service is great, public policy supports the enforcement of the collective bargaining agreement as written and the rejection of any implication that the right to terminate it on reasonable notice in the circumstances of this case. By its terms, the collective bargaining agreement is still in effect." *Id.* at 327. The court states that the *Local 589* decision is "inapposite" here because the MBTA is not covered by G. L. c. 150E, and therefore not subject to § 7 (*a*). *Ante* at 164. While it is true that § 7 (*a*) does not apply to the MBTA, the same public policy concerns do apply with equal force in the present case. According to art. VIII of the CBA between the BHA and Local 3, the BHA's employees — like all other public employees, see G. L. c. 150E, § 9A (*a*) — are not permitted to strike, arbitration has been contractually mandated for resolution of grievances under all their CBAs, and there is a strong public interest in having the operation and maintenance of public housing developments take place without disruption caused by labor unrest.

after the stated term of a CBA has been reached and a new CBA is not yet in place.

3. Underlying the court's opinion is a wholly legitimate concern about the seemingly leisurely status and pace of public sector bargaining. I agree that successor CBAs between public sector employers and employees should be negotiated and executed on a timetable that makes them truly successive, rather than retroactively effective. At the same time, it is clear from the record, and from our own decisions, see, e.g., *National Ass'n of Gov't Employees* v. *Commonwealth,* 419 Mass. 448, cert. denied, 515 U.S. 1161 (1995), that this has not always been the practice or perhaps even the norm, and yet there has been no legislative effort to change it. The court's insistence that the language of § 7 (*a*) unambiguously invalidates an evergreen clause is belied by this history. Furthermore, in the present case, the BHA had options available to it to end the extension of the MOA as well as the evergreen clause, if that is what it sought.[9]

For these reasons, I respectfully dissent. I would conclude, as did the Superior Court judge, that the arbitrator's award did not violate § 7 (*a*) and was not subject to vacation pursuant to G. L. c. 150C, § 11 (*a*) (3), on that ground. Because I also believe that the judge below correctly decided, contrary to the BHA's arguments, that the award does not violate any well-defined public policy and is not otherwise illegal — two issues not reached by the court here — I would affirm the judgment of the Superior Court.

---

[9]If the BHA were to conclude that Local 3 was not bargaining in good faith concerning the extension of the MOA (or a change in the evergreen clause), it could file an unfair labor practice charge pursuant to G. L. c. 150E, § 10 (*b*) (2), or a grievance under the MOA. A determination of bad faith bargaining in either forum, by itself, would render void the evergreen clause. Furthermore, assuming the parties continued to bargain in good faith, nothing in the evergreen clause interfered with the ability of the BHA to declare an impasse — on its own and with no resort to the procedures laid out in G. L. c. 150E, § 9 — after exhausting the possibility of reaching agreement. See *Newton Branch of the Mass. Police Ass'n* v. *Newton,* 396 Mass. 186, 190 (1985); *Massachusetts Org. of State Eng'rs & Scientists* v. *Labor Relations Comm'n,* 389 Mass. 920, 926-928 (1983). If the BHA were to follow such a path, it would be free to implement unilaterally those changes that were "reasonably comprehended within its pre-impasse proposals." *Id.* at 927, quoting *Hanson Sch. Comm.,* 5 M.L.C. 1671, 1675-1676 (1979). Accord *Newton Branch of the Mass. Police Ass'n* v. *Newton, supra.*